# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID PERKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08 C 2251 |
| ) | |
| ILLINOIS RAILWAY, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

David Perkins sues his former employer, Illinois Railway, Inc., (IR) under the Federal Employers' Liability Act (FELA) for injuries he sustained while he was employed as a track man. While working as part of a team installing a signal light at a railroad crossing, Perkins injured his shoulder when he attempted to catch a heavy signal light as it fell from a truck. Perkins claims his injuries were caused by IR's negligence. He also brings a claim of tortious interference with prospective economic advantage, alleging that IR caused him to lose his job with a locomotive repair company that did work for IR by prohibiting him from working on IR property.

IR moves for summary judgment on both claims. For the reasons below, the Court grants the motion in part and denies it in part.

## Facts

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed

evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2009). The Court takes the following facts from the Perkins' complaint and from the parties' statements of facts as to which there is no genuine issue.

In May 2006, Perkins was employed by IR as a track man. When he arrived at work on May 2, 2006, Perkins' supervisor, Al Block, told him that his assignment for the day was to work with a team from Railroad Controls Limited (RCL) that was installing traffic signals at a railroad crossing in Ottawa, Illinois. Block told Perkins that he would assist by flagging traffic around the job site and instructed Perkins to follow the instructions of Erik Loy, the RCL employee in charge of the installation project. Perkins conferred briefly with Loy and Al Chambers, the other RCL employee on the project, who confirmed that Perkins would flag traffic while they installed the signal lights.

Perkins, Loy, and Chambers each drove a truck to the job site. Perkins drove an IR truck (the "boom truck") equipped with a boom for lifting heavy objects. The boom was not usable, however, because Perkins had been instructed to remove from the truck the chains that go with the boom. On the way to the job site, Perkins, Loy, and Chambers stopped at a warehouse to pick up several signal lights that were to be installed. They loaded at least two of the signal lights onto the boom truck.

When they arrived at the job site, Loy and Chambers parked their trucks in the road, beneath where the signal lights were to be installed, and Perkins parked the boom truck on the shoulder. Perkins climbed up onto the bed of the boom truck and slid the first signal light over to the edge of the truck. Chambers steadied it while Perkins got off the truck, then the two of them carried it to the road, where a lift was set up for

2

installation. This first signal light was unloaded without incident.

Loy and Chambers then proceeded to get into the lift to install the first signal light, while Perkins flagged traffic around the trucks in the road. For about an hour, Perkins flagged traffic while Loy and Chambers installed the signal light. At least twice during that hour, Loy or Chambers dropped a tool and instructed Perkins to stop flagging to toss the tool back up to them so they would not have to bring the lift back down to retrieve it.

After about an hour of traffic flagging, Perkins decided to try to speed the installation process along by preparing a second signal light for installation. He climbed back onto the bed of the boom truck and began sliding the second signal light over to the edge of the truck. Loy and Chambers, who were still working on the first signal light, did not instruct him to do this. As he was moving the signal light to the edge of the truck, it slipped. Perkins attempted to catch the seventy-five pound signal light as it fell. As the appliance fell to the ground, it pulled Perkins' shoulder out of its socket. Neither Loy nor Chambers saw the accident. Perkins went to the hospital that day and later had surgery to repair his shoulder.

In July 2007, Perkins voluntarily left his position at IR to go work for LocoDocs, a company that services locomotive engines. Perkins worked repairing locomotives. Much of LocoDocs' business (seventy-five to eighty percent) comes from repairs it makes on an as-needed basis to IR locomotives.

In January, 2008, Perkins retained a lawyer in connection with the injuries he had sustained in the May 2, 2006 accident. Perkins' counsel sent IR a letter stating that Perkins had retained counsel and asking that its "claim agents and personnel" no longer

contact Perkins without counsel's prior approval.

Based on this letter, IR decided to inform LocoDocs that Perkins could no longer work on its property, purportedly to ensure that IR employees would not have contact with him. The day IR made this decision, Perkins was working on a job on IR property, and he was sent home early. Prior to that, Perkins had worked on IR property without incident, and IR had made no complaints about him to LocoDocs.

Around the same time, LocoDocs was experiencing a lack of work for its employees. Less than a week after Perkins was sent home from the IR job, Robert Bekker, the owner of LocoDocs, held a company-wide meeting. He informed his employees that LocoDocs was in financial trouble and that it might be necessary to let some people go. Approximately two weeks later, on February 8, 2008, Bekker told Perkins that he was being let go because there was not enough work. Perkins was given the choice to quit or be fired, and he elected to quit. More than half of LocoDocs' employees were let go at the same time.

Several weeks later, IR retained LocoDocs for a large-scale repair job. LocoDocs brought back to work all of the employees it had laid off except Perkins. Perkins was not brought back because he was not allowed to work on IR property and there was no other work for him to do.

**Discussion**

**A.    FELA claim (count 1)**

Under FELA, "every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in

4

whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51. An employee seeking to recover under FELA must demonstrate the elements of a negligence claim: duty, breach, foreseeability, and causation. *Williams v. Nat'l R.R. Corp.*, 161 F.3d 1059, 1062-63 (7th Cir. 1998). "In a FELA action, the railroad will be held liable if the employer's negligence played any part, even the slightest, in producing the injury." *Walker v. Ne. Reg. Commuter R.R. Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

Perkins argues that his shoulder injury was caused, at least in part, by IR's negligence in failing to provide a reasonably safe workplace, in that IR did not provide chains to make the boom usable and did not give Perkins adequate training. FELA "makes the railroad liable for injury or death *resulting in whole or in part* from the negligence of the railroad or its employees." *Coffey v. Ne. Ill. Reg. Commuter R.R. Corp.*, 479 F.3d 472, 476 (7th Cir. 2007) (emphasis in original, citing 45 U.S.C. § 51).

In its summary judgment motion, IR makes two arguments why Perkins' FELA claim fails. First, IR contends that Perkins was acting independently, not pursuant to his employment, when he elected to move the second signal light to the edge of the truck. Second, and relatedly, IR argues that because Perkins was supposed to be flagging traffic, not unloading signal lights, his injury was not foreseeable.

IR argues, essentially, that Perkins acted outside the scope of his employment when he moved the signal light. Courts employ a traditional summary judgment standard on scope of employment issues in the FELA context. *Wilson v. Chi., Milwaukee, St. Paul, and Pac. R.R. Co.*, 841 F.2d 1347, 1354-55 (7th Cir. 1988). "In

5

reviewing whether there is a genuine issue about whether [Perkins'] conduct fell within the scope of his employment, [the Court] need only determine whether a reasonable jury could find for [Perkins] on this issue." *Id.*

IR points out that Perkins was not instructed to move the signal light. A defendant cannot prevail on summary judgment under FELA merely because an employee was not "required" to perform the act that resulted in the injury. *Id*. at 1355. "Even if not required, an act could be within the scope of employment if it is a necessary incident of his day's work." *Id*. In this context, "the word 'necessary' is in the sense of 'appropriate;' . . . not only those acts which the employer requires." *Id*. The Seventh Circuit has adopted the factors laid out in the Restatement (Second) of Agency § 229 for determining scope of employment, noting that in circumstances like those Perkins presents, "there are two principal factual issues . . . motivation, and . . . whether objectively his [actions] . . . furthered the Railroad's business." *Id.* at 1356.

Though IR argues that Perkins' only responsibility was to flag traffic, there is evidence that Perkins' supervisor at IR told him to follow Loy's instructions. Earlier in the day, Perkins had helped Loy and Chambers load signal lights onto the boom truck and had helped Chambers unload one signal light off the truck by sliding it to the edge of the truck bed. Perkins' testimony is that he used the same method to move the second signal light to the edge of the truck. A reasonable jury could find that moving the signal light was "appropriate" given Perkins' assignment to assist Loy and Chambers and the tasks they arguably had him perform earlier in the day. In this case, the issue requires factual determinations appropriately left to a jury.

IR also argues that Perkins' injury was not foreseeable. The FELA holds

railroads to a prudent-person standard of care, and "a plaintiff who wishes to demonstrate that a railroad breached its duty must show circumstances that a reasonable person would foresee as creating a potential for harm." *Williams*, 161 F.3d at 1063. IR contends that because Perkins was not flagging traffic as he was supposed to, there was no way for IR to anticipate the injury. Perkins contends that it was foreseeable that he would move signal lights in the course of his assignment to assist Loy and Chambers. He also argues that because the boom truck was not equipped with the chains that would have allowed the team to use the boom to lift the signal appliances, it was foreseeable that they would have to do it by hand and thus that someone could be injured in doing so.

IR argues that even if it was foreseeable that Perkins would help move the signal lights, it was not foreseeable that he would do so in what IR says was an unsafe manner. IR offers testimony from an IR employee who testified that moving a signal appliance by hand as part of a two-man team is safe, but moving one by oneself is not. It argues that Perkins' choice to use an unsafe method was not foreseeable and therefore Perkins cannot recover. The record indicates, however, that even the two-man procedure that IR deems safe involved Perkins moving the signal light to the edge of the truck by himself, as he did when he successfully unloaded the signal light with Chambers. Perkins claims he used the same procedure again to move the second signal light to the edge of the truck. The Court concludes that there is a genuine issue of fact about whether it was foreseeable that Perkins would be involved in moving the signal lights and that moving them by hand could cause injury.

"A long line of FELA cases reiterate the lesson that the statute vests the jury with

7

broad discretion to engage in common sense inferences regarding issues of causation and fault." *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 132. The issues Perkins raises, and the arguments IR offers, involve precisely the kind of factual and inferential disputes that should be decided by a jury. Summary judgment is therefore inappropriate as to the FELA claim (count 1).[1]

**B.      Tortious interference claim (count 2)**

In count 2, Perkins argues that IR's decision to bar him from IR property caused LocoDocs to fire him and not to hire him back once work picked up in late February 2008. This, he contends, constituted tortious interference with his perspective economic advantage. To prevail on a claim for tortious interference with prospective economic advantage, a plaintiff must prove his reasonable expectation of entering into a valid business relationship; the defendant's knowledge of the plaintiff's expectancy; purposeful interference by the defendant that prevents the plaintiffs legitimate expectancy from ripening into a valid business relationship; and damages to the plaintiff resulting from such interference. *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511, 568 N.E. 2d 870, 878 (1991).

A defendant's interference with a plaintiff's prospective economic advantage is subject to a conditional privilege. *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170-71 (7th Cir. 1993). Conduct is privileged if the defendant acted in good faith to protect a business interest or uphold a duty. *Id.* at 171. If the defendant's conduct was

---

[1] For this reason, the Court need not resolve at this juncture Perkins' objection to certain testimony by Block that Perkins contends was not properly disclosed. The matter may be raised, if Perkins wishes, via a motion *in limine* prior to trial.

privileged, the plaintiff bears the burden of proving that the defendant's conduct was malicious. *Id.*

The parties do not dispute that Perkins was an at-will employee of LocoDocs. Although IR argues that this defeats Perkins' claim, at-will employees can have a valid expectancy of a continued employment relationship sufficient to satisfy the first element of a tortious interference claim. *Fellhauer*, 142 Ill. 2d at 512, 568 N.E.2d at 878. Nor do the parties dispute that IR knew of Perkins' relationship with LocoDocs, which a jury could find satisfies the second element. Further, it appears from the record that though several LocoDocs employees were let go at the same time as Perkins, all of them except Perkins (and one other employee, who had found work elsewhere) were brought back to work at LocoDocs shortly thereafter, when work with IR picked up again. Perkins was therefore damaged by IR's instruction that he no longer work on IR property, which a jury could find satisfies the fourth element of the test.

IR argues that Perkins cannot satisfy the third element of the test: intentional interference with the employment relationship. IR contends that it never instructed LocoDocs to fire Perkins, nor did it suggest that LocoDocs' future work with IR was in jeopardy if Perkins continued to work there. IR also argues that any communications it made to LocoDocs were privileged, as it was protecting its legitimate business interests with its response to the letter from Perkins' counsel, which it (correctly) assumed was a precursor to a lawsuit. Therefore, IR contends, Perkins has the burden of proving that IR acted not just intentionally but with malice when it instructed Bekker that Perkins could no longer work on IR property, a burden it argues Perkins has failed to meet.

Perkins concedes that when IR informed Bekker that Perkins could no longer

9

work on IR property, IR did not suggest or demand that Perkins be fired from LocoDocs. Pl.'s Resp. to Def.'s L.R. 56.1 Stat. ¶ 35. Perkins argues, however, that the IR legal department purposely misread the letter from his counsel. He argues that it was clear, at least to a railroad legal department, that the letter insisted only on no contact by claims agents, not all IR employees. Perkins contends that the IR legal department deliberately misconstrued the letter to take actions that it knew would likely result in Perkins losing his job with LocoDocs.

Even if Perkins is right that IR's legal department purposely read too much into his lawyer's letter, he has offered no evidence from which a reasonable jury could find that IR intended, or even realized, that this would lead LocoDocs to fire Perkins outright. All Perkins offers is a contention unsupported by any evidence: "IR knew the consequences of its misinterpretation and subsequent actions." *Id.* ¶ 41. Though one would expect a plaintiff's proof on this point to be inferential or circumstantial, Perkins has offered no evidence on which a jury reasonably could base an inference that by barring him from its property, IR knew that Perkins would lose his job with LocoDocs. In particular, Perkins offers no evidence that anyone at IR who was involved in giving the instruction to LocoDocs was aware that nearly all of LocoDocs' work came from IR.[2]

For this reason, IR is entitled to summary judgment on the tortious interference claim (count 2).

---

[2] Perkins cites testimony by Bekker regarding the percentage of his business that came from IR but no testimony or other evidence that the relevant IR personnel were aware of this.

**Conclusion**

For the foregoing reasons, the Court grants defendant's motion for summary judgment [docket no. 53] as to Count 2 of the complaint but denies the motion as to Count 1. The case is set for a status hearing on March 23, 2010, at 9:30 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 11, 2010